**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA,<br><br>    *Petitioner*,<br><br> v.<br><br>JOSEPH VELLALI, NANCY S. LOWERS, JAN M. TASCHNER, and JAMES MANCINI, individually and as representatives of a class of participants and beneficiaries on behalf of the Yale University Retirement Account Plan,<br><br>    *Respondents*. | Case No. 19 Misc. <u>171</u><br><br><br><br>[Underlying Case:<br>USDC District of Connecticut<br>Case No. 3:16-cv-01345-AWT] |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR A PROTECTIVE ORDER TO MODIFY NON-PARTY SUBPOENA**
**AND FOR TRANSFER UNDER FEDERAL RULE OF CIVIL PROCEDURE 45(f)**

James I. Glasser
WIGGIN AND DANA LLP
One Century Tower
265 Church Street
New Haven, CT 06510
(203) 498-4400 (t)
(203) 782-2889 (f)
jglasser@wiggin.com

Lori A Martin
Brad E. Konstandt
WILMER CUTLER PICKERING
 HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800 (t)
(212) 230-8888 (f)
lori.martin@wilmerhale.com
brad.konstandt@wilmerhale.com

*Attorneys for Petitioner Teachers Insurance*
*and Annuity Association of America*

# TABLE OF CONTENTS

BACKGROUND ....................................................................................................................... 1

    A.  Prior TIAA Testimony on the Overlapping Topics ........................................................ 4

        1. Testimony regarding TIAA recordkeeping capabilities ............................................... 4

        2. Testimony regarding annuity contract provisions ....................................................... 5

        3. Testimony regarding recordkeeping pricing considerations ........................................ 6

    B.  The *Yale* Subpoena and the Meet and Confers ............................................................. 7

ARGUMENT ......................................................................................................................... 10

I.   THE COURT SHOULD TRANSFER THIS MOTION TO THE DISTRICT OF
    CONNECTICUT, WHERE IT CAN BE HEARD BY THE COURT HANDLING
    THE *YALE* ACTION .......................................................................................................... 10

II.  THE COURT SHOULD GRANT TIAA RELIEF FROM SUBPOENA ITEMS
    ON WHICH IT HAS ALREADY PROVIDED THE SCHLICHTER FIRM WITH
    TESTIMONY ....................................................................................................................... 11

    A.  The Disputed Discovery Is Cumulative, Duplicative, and Unduly Burdensome ........... 11

    B.  TIAA's Prior Testimony on the Overlapping Topics Is Admissible .............................. 14

III. ALTERNATIVELY, THE COURT SHOULD LIMIT TESTIMONY ON
    THE SUBPOENA ITEMS FOR WHICH TIAA HAS PROVIDED PRIOR
    TESTIMONY AND SHIFT TO PLAINTIFFS-RESPONDENTS THE REASONABLE
    FEES AND COSTS THAT TIAA INCURS PREPARING AND DEFENDING
    TESTIMONY ON THE OVERLAPPING TOPICS ............................................................. 16

CONCLUSION ..................................................................................................................... 18

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Arista Records LLC v. Lime Group LLC*, No. 06 Civ. 5936, 2011 WL 781198
(S.D.N.Y. Mar. 4, 2011) ...................................................................................12

*City of New York v. A-1 Jewelry & Pawn, Inc.*, No. 06 CV 2233 (JBW), 2008 WL
346366 (E.D.N.Y. Feb. 6, 2008)..............................................................13, 16

*Crawford-El v. Britton*, 523 U.S. 574 (1998) ............................................................11

*Dongguk University v. Yale University*, 270 F.R.D. 70 (D. Conn. 2010)................12, 14

*Federal Housing Finance Agency v. Merrill Lynch & Co.*, No. 11 CIV. 6202
DLC, 2014 WL 798385 (S.D.N.Y. Feb. 28, 2014)...........................................15

*In re Namenda Direct Purchaser Antitrust Litig.*, No. 15 Civ. 7488 (CM)(JCF),
2017 WL 3822883 (S.D.N.Y. Aug. 30, 2017)...................................................17

*Jack Frost Laboratories, Inc. v. Physicians & Nurses Manufacturing Corp.*, No.
92 CIV. 9264 (MGC), 1994 WL 9690 (S.D.N.Y. Jan. 13, 1994).....................12

*KGK Jewelry LLC v. ESDNetwork*, No. 11 CIV. 9236, 2014 WL 1199326
(S.D.N.Y. Mar. 21, 2014) .................................................................................10

*Krasney v. Nationwide Mutual Insurance Co.*, No. 3:06 CV 1164 JBA, 2007 WL
4365677 (D. Conn. Dec. 11, 2007)...................................................................11

*North River Insurance Co. v. O&G Industries, Inc.*, No. 3:13-CV-00589 (JAM),
2016 WL 6600490 (D. Conn. Nov. 7, 2016) ....................................................16

*Pittman ex rel. Hamilton v. County of Madison*, 863 F.3d 734 (7th Cir. 2017),
*cert. denied sub nom. Madison County v. Pittman*, 138 S. Ct. 983 (2018) ......................14

*Santrayll v. Burrell*, No. 91 CIV. 3166 (PKL), 1998 WL 60926 (S.D.N.Y. Jan. 21,
1998) .................................................................................................................15

*SEC v. Ahmed*, No. 3:15CV675 (JBA), 2017 WL 1391518 (D. Conn. Apr. 7,
2017) .................................................................................................................14

*SEC v. Pence*, 323 F.R.D. 179 (S.D.N.Y. 2017)........................................................10

*United States v. Plitman*, 194 F.3d 59 (2d Cir. 1999)................................................14

## STATUTES, RULES, AND REGULATIONS

Fed. R. Civ. P. 26(b) ............................................................................................................1, 11, 12

Fed. R. Civ. P. 45(d) .................................................................................................1, 10, 11, 16, 17

Fed. R. Civ. P. 45(f) ..............................................................................................................1, 10

Fed. R. Evid. 804(b)(1) ........................................................................................................15

Local Civil Rule 7.1 ..............................................................................................................1

Pursuant to Rules 26(b) and 45(d) of the Federal Rules of Civil Procedure and Local Civil Rule 7.1, petitioner Teachers Insurance and Annuity Association of America ("TIAA"), a non-party to the action captioned *Vellali v. Yale University*, No. 3:16-cv-01345-AWT (D. Conn.), respectfully moves for a protective order to modify the February 7, 2019 Subpoena to Testify at a Deposition in a Civil Action (the "Subpoena") directed to TIAA by the respondents ("Plaintiffs-Respondents"), or, in the alternative, for an order regarding scope of testimony that is just and proper, and an award of reasonable costs and attorneys' fees. TIAA further requests that, pursuant to Rule 45(f), this Court transfer the instant motion to the United States District Court for the District of Connecticut for consideration by the court presiding over the underlying action.

## BACKGROUND

TIAA was founded in 1918 to provide guaranteed retirement income and life insurance to educators. TIAA operates without profit in accordance with its charter and is a leader in the provision of retirement services to the academic, government, medical, cultural, and other nonprofit fields. TIAA provides recordkeeping and investment management services to the Yale retirement plan at issue in the underlying *Yale* action (the "Plan").

*Vellali v. Yale* is one of 14 actions that Plaintiffs-Respondents' counsel, Schlichter Bogard & Denton (the "Schlichter firm"), has initiated against the nation's leading universities.[1] In all but one case, the Schlichter firm alleges that the defendant university violated its fiduciary duties

---

[1]     These cases are *Cates v. Columbia Univ.*, No. 1:16-cv-06524 (S.D.N.Y.) ("*Columbia*"); *Cunningham v. Cornell Univ.*, No. 1:16-cv-06525 (S.D.N.Y.) ("*Cornell*"); *Clark v. Duke Univ.*, No. 1:16-cv-01044 (M.D.N.C.) ("*Duke I*"); *Lucas v. Duke Univ.*, No. 1:18-cv-00722 (M.D.N.C.) ("*Duke II*"); *Henderson v. Emory Univ.*, No. 1:16-cv-02920 (N.D. Ga.) ("*Emory*"); *Kelly v. Johns Hopkins Univ.*, No. 1:16-cv-02835 (D. Md.) ("*Johns Hopkins*"); *Tracey v. Mass. Inst. of Tech.*, No. 1:16-cv-11620 (D. Mass.) ("*MIT*"); *Sacerdote v. N.Y. Univ.*, No. 1:16-cv-06284 (S.D.N.Y.) ("*NYU I*"); *Sacerdote v. Ret. Plan Comm.*, No. 1:17-cv-08834 (S.D.N.Y.) ("*NYU II*"); *Divane v. Northwestern Univ.*, No. 1:16-cv-08157 (N.D. Ill.) ("*Northwestern*"); *Sweda v. Univ. of Pa.*, No. 2:16-cv-04329 (E.D. Pa.) ("*Penn*"); *Munro v. Univ. of S. Cal.*, No. 2:16-cv-06191 (C.D. Cal.) ("*USC*"); and *Cassell v. Vanderbilt Univ.*, No. 3:16-cv-02086 (M.D. Tenn.) ("*Vanderbilt*").

to participants in the university's retirement plan by, among other things, including TIAA investment products in the plan and by paying TIAA excessive fees for recordkeeping services.

Eight of the Schlichter firm's cases have proceeded to discovery.  In each of these cases, the Schlichter firm served a Rule 30(b)(6) deposition subpoena on TIAA.[2]  Each subpoena sought, among other things, substantially identical information about TIAA's investment products, recordkeeping capabilities, and the terms of TIAA's contracts for annuities.[3]  All but one of the subpoenas sought testimony on any marketing by TIAA of its non-plan products and services to participants in retirement plans across the country.[4]  We refer to the identical requests—which Plaintiffs-Respondents include in the Subpoena that is the subject of this motion—as the "Overlapping Topics."

TIAA has produced ten corporate representatives who have testified thirteen times in six different cases brought by the Schlichter firm.[5]  TIAA spent over 115 hours preparing these witnesses to testify, which included reviewing documents and interviewing subject matter experts at TIAA to meet their obligations to testify as corporate representatives.[6]  TIAA

---

[2]	*See* Exs. 1, 12-17 to the Declaration of Brad Konstandt (the "Konstandt Decl."), regarding the Schlichter firm's subpoenas in the *NYU I* (October 20, 2017), *Northwestern* (February 21, 2018), *Duke I* (May 3, 2018), *Emory* (June 8, 2018), *Cornell* (July 11, 2018), *Columbia* (July 20, 2018), and *Yale* (February 7, 2019) litigations.  The Schlichter firm also served a Rule 30(b)(6) subpoena on TIAA in *Vanderbilt*, Konstandt Decl., Ex. 18, but the case is stayed pending settlement discussions and private mediation.  *See Vanderbilt*, Dkt. Nos. 137-38.

[3]	*See supra* note 2.

[4]	Seven of the eight Rule 30(b)(6) subpoenas listed *supra* in note 2 contain items on marketing-related topics (*NYU I*, the first subpoena served on TIAA, does not include those topics).

[5]	*See* Konstandt Decl., Ex. 19 (Deposition of Douglas Chittenden in *NYU I*, dated November 22, 2017); Ex. 20 (Deposition of Peter Hueber in *NYU I*, dated November 22, 2017); Ex. 21 (Deposition of Elena Zanussi in *Northwestern*, dated April 4, 2018); Ex. 22 (Deposition of Keith Rauschenbach in *Duke I*, dated May 8, 2018); Ex. 23 (Deposition of Thomas White in *Duke I*, dated May 8, 2018); Ex. 24 (Deposition of Joseph Nordmark in *Duke I*, dated May 17, 2018); Ex. 25 (Deposition of Timothy O'Donnell in *Emory*, dated July 18, 2018); Ex. 26 (Deposition of Adam Polacek in *Emory*, dated July 19, 2018); Ex. 27 (Deposition of Paul Weber in *Cornell*, dated August 8, 2018); Ex. 28 (Deposition of Adam Polacek in *Cornell*, dated August 10, 2018); Ex. 29 (Deposition of Adam Polacek in *Columbia*, dated August 22, 2018); Ex. 30 (Deposition of Michael Noone in *Columbia*, dated August 28, 2018); Ex. 31 (Deposition of Thomas White in *Columbia*, dated September 28, 2018).

[6]	Declaration of Julie Calderon Rizzo (the "Calderon Rizzo Decl.") ¶ 4.

corporate representatives have provided 53 total hours of testimony in the Schlichter firm's cases.[7]  TIAA has also produced over 1.3 million pages of documents in response to document subpoenas served on it by the Schlichter firm in eight cases.[8]

With respect to the Overlapping Topics, five TIAA corporate representatives testified eight times in six cases.[9]  They spent a total of 46 hours preparing for and 30 hours testifying at their depositions on the Overlapping Topics.[10]  Given that the Overlapping Topics do not relate to any particular university defendant, the requests for testimony in the template Schlichter firm lawsuits on the Overlapping Topics have resulted in substantial burden to TIAA with little, if any, enhanced fact development for the plaintiffs bringing these cases.

In the *Yale* action, which is the subject of this motion, the Overlapping Topics appear as Topic Nos. 16, 19, 24-25, and 29-31 in the Subpoena:[11]

> *Topic No. 16*:  The ability of vendors other than TIAA to provide recordkeeping and/or administrative services for TIAA investment options.

> *Topic No. 19*:  The ability of the Plan's fiduciaries to remove TIAA investment options, including CREF Stock Account, the TIAA Real Estate Account, and TIAA Traditional Annuity, from the Plan lineup, or to restrict new investments into TIAA investment options.

> *Topic No. 24*:  TIAA marketing and/or selling Non-Plan Products, including but not limited to private asset management, individual wealth management, and individual retirement products, to the Plan's participants.

> *Topic No. 25*:  The dollar value of TIAA's access to the personal and demographic

---

[7]     *Id.* ¶ 5.

[8]     *Id.* ¶ 4.

[9]     *See* Konstandt Decl., Ex. 19 (Deposition of Douglas Chittenden in *NYU I*, dated November 22, 2017); Ex. 21 (Deposition of Elena Zanussi in *Northwestern*, dated April 4, 2018); Ex. 22 (Deposition of Keith Rauschenbach in *Duke I*, dated May 8, 2018); Ex. 23 (Deposition of Thomas White in *Duke I*, dated May 8, 2018); Ex. 26 (Deposition of Adam Polacek in *Emory*, dated July 19, 2018); Ex. 28 (Deposition of Adam Polacek in *Cornell*, dated August 10, 2018); Ex. 29 (Deposition of Adam Polacek in *Columbia*, dated August 22, 2018); Ex. 31 (Deposition of Thomas White in *Columbia*, dated September 28, 2018).

[10]    Calderon Rizzo Decl. ¶ 6.

[11]    Konstandt Decl., Ex. 1 (*Yale* Rule 30(b)(6) subpoena, dated February 7, 2019).

information of the Plan's participants.

*Topic No. 29*:  The dollar amount spent by TIAA to advertise Non-Plan Products, including but not limited to private asset management, individual wealth management, and individual retirement products, to the Plan's participants.

*Topic No. 30*:  Commissions, income, bonuses, or profit sharing that TIAA personnel received for marketing, selling, or providing Non-Plan Products, including but not limited to private asset management, individual wealth management, and individual retirement products, to the Plan's participants.

*Topic No. 31*:  Revenues and/or profits TIAA derived from selling and/or providing Non-Plan Products to the Plan's participants.

**A.      Prior TIAA Testimony on the Overlapping Topics**

The Schlichter firm has developed cumulative testimony on each of the Overlapping Topics.  The prior testimony related to TIAA's products and services is of broad applicability.  It was not specific to any particular university defendant.  TIAA includes here a few illustrative examples.

**1.      *Testimony regarding TIAA recordkeeping capabilities***

Consider the following illustrative questions regarding the ability of vendors other than TIAA to recordkeep TIAA investment options (Topic No. 16 in the *Yale* Subpoena):

- *NYU I*:  "[W]hy did TIAA conclude[, ']no, other recordkeepers can't provide services for the TIAA Traditional annuity?[']"[12]

- *Northwestern*:  "Do you have any information that would allow you to state that another entity could not recordkeep TIAA Traditional products if given the data by TIAA to do so?"[13]

- *Duke I*:  "Has TIAA allowed any of its annuity products other than the traditional annuity, to be used in a defined contribution retirement plan that was not record-kept by TIAA?"[14]

---

[12]      *Id.*, Ex. 19 (Deposition of Douglas Chittenden in *NYU I*, dated November 22, 2017) at 245:14-17.

[13]      *Id.,* Ex. 21 (Deposition of Elena Zanussi in *Northwestern*, dated April 4, 2018) at 200:6-9.

[14]      *Id.*, Ex. 22 (Deposition of Keith Rauschenbach in *Duke I*, dated May 8, 2018) at 27:7-10.

- *Emory*:  "Is there – as you sit here today, are you aware of any reason why another company cannot keep track of these vintages with respect to the TIAA Traditional?"[15]

- *Cornell*:  "So as far as you know, there's nothing that would stop TIAA from tracking vintages, performing calculations, and then sending the results of those calculations to an external record keeper; is that true?"[16]

- *Columbia*:  "Does any other record keeper record keep TIAA or CREF variable annuities? . . . What about TIAA [T]raditional?"[17]

### 2.    *Testimony regarding annuity contract provisions*

The Schlichter firm also has taken cumulative testimony on a plan sponsor's ability to

remove TIAA annuities from the menu of available investments in university retirement plans

(Topic No. 19 in the *Yale* Subpoena):

- *NYU I*:  "So why would the contract between TIAA and the participants preclude NYU from removing the CREF [S]tock [A]ccount?"[18]

- *Northwestern*:  "So if a plan sponsor determines that it no longer wants to offer one of the three locked-in funds—the CREF Stock, the CREF Money Market fund, or the TIAA Traditional as a plan option—it can elect to enter into the Retirement Choice or Retirement Choice Plus annuity contracts and simply not offer one or more of those products, correct?"[19]

- *Duke I*:  "So other than the Retirement Choice contracts, once an employer signs one of the non-Retirement Choice contracts, those TIAA annuity investment products are in the plan and cannot be removed from the plan?"[20]

- *Emory*:  "Do you know why there's a requirement that [TIAA Traditional, CREF Stock, and CREF Money Market] be included under the RA contract?"[21]

---

[15]    *Id.*, Ex. 26 (Deposition of Adam Polacek in *Emory*, dated July 19, 2018) at 56:18-21.

[16]    *Id.*, Ex. 28 (Deposition of Adam Polacek in *Cornell*, dated August 10, 2018) at 142:22-143:2.

[17]    *Id.*, Ex. 29 (Deposition of Adam Polacek in *Columbia*, dated August 22, 2018) at 179:19-22.

[18]    *Id.*, Ex. 19 (Deposition of Douglas Chittenden in *NYU I*, dated November 22, 2017) at 112:25-113:4.

[19]    *Id.,* Ex. 21 (Deposition of Elena Zanussi in *Northwestern*, dated April 4, 2018) at 184:11-18.

[20]    *Id.*, Ex. 22 (Deposition of Keith Rauschenbach in *Duke I*, dated May 8, 2018) at 38:13-17.

[21]    *Id.*, Ex. 26 (Deposition of Adam Polacek in *Emory*, dated July 19, 2018) at 66:24-67:3.

- *Cornell*: "So if a plan sponsor selects the RC or RCP as a form of the contract for its plan, then there's no requirement that the CREF Stock Account be included; right?"[22]

- *Columbia*: "Prior to the [R]etirement [C]hoice contracts, were there any annuity contracts that did not require inclusion of the CREF [S]tock [A]ccount or TIAA [T]raditional?"[23]

The Schlichter firm has questioned TIAA at length about whether a plan sponsor or TIAA has authority to amend participants' individually-owned TIAA annuity contracts to remove certain TIAA investment options in university retirement plans (Topic No. 19 in the *Yale* subpoena):

- *NYU I*: "Can you also update or amend [annuity] contracts to remove investment options?"[24]

- *Northwestern*: "And does TIAA reserve any rights under the individual annuity contracts to amend the contracts if necessary?"[25]

- *Emory*: "Let's just talk about the RA [annuity] contract.  Does TIAA have any ability to modify or amend an RA contract?"[26]

- *Cornell*: "Now, the legacy [annuity] contracts, does TIAA have any ability to modify or amend those?"[27]

- *Columbia*: "Does TIAA have the ability to amend legacy [annuity] contracts?"[28]

### 3. *Testimony regarding recordkeeping pricing considerations*

TIAA also provided testimony in numerous cases on any impact of marketing non-plan products and services on price negotiations for recordkeeping services (Topic Nos. 25 & 31 in the *Yale* Subpoena):

---

[22]    *Id.*, Ex. 28 (Deposition of Adam Polacek in *Cornell*, dated August 10, 2018) at 23:21-24.

[23]    *Id.*, Ex. 29 (Deposition of Adam Polacek in *Columbia*, dated August 22, 2018) at 130:15-18.

[24]    *Id.*, Ex. 19 (Deposition of Douglas Chittenden in *NYU I*, dated November 22, 2017) at 172:8-9.

[25]    *Id.,* Ex. 21 (Deposition of Elena Zanussi in *Northwestern*, dated April 4, 2018) at 188:22-24.

[26]    *Id.*, Ex. 26 (Deposition of Adam Polacek in *Emory*, dated July 19, 2018) at 92:23-93:2.

[27]    *Id.*, Ex. 28 (Deposition of Adam Polacek in *Cornell*, dated August 10, 2018) at 58:20-21.

[28]    *Id.*, Ex. 29 (Deposition of Adam Polacek in *Columbia*, dated August 22, 2018) at 125:16-17.

- *NYU I*: "Is that access to the marketing pool of NYU participants, is that considered when TIAA is pricing out its recordkeeping services for the NYU plan?"[29]

- *Duke I*: "Do you know whether that access to the information for marketing purposes is used in a factor in negotiating the terms of the recordkeeping arrangement with the plan?"[30]

- *Columbia*: "So for any given recordkeeping clients of TIAA, you would agree that the marketing for retail products that TIAA does is not a factor in the negotiations for recordkeeping pricing.  Is that true?"[31]

### B.      The *Yale* Subpoena and the Meet and Confers

In the *Yale* case, the Schlichter firm served TIAA with its eighth subpoena requesting testimony on the Overlapping Topics.  Upon receipt of the Subpoena, TIAA met and conferred with the Schlichter firm.  TIAA requested that the Schlichter firm consider ways to minimize the burden on TIAA in providing testimony on the Overlapping Topics.  In a letter dated March 1, 2019, TIAA requested that the Schlichter firm limit the Subpoena to information unique to Yale's relationship and communications with TIAA and try, where possible, to use testimony it previously developed on TIAA's products, services, and marketing efforts.[32]  The parties exchanged several letters and spoke by phone on March 18, 22, and 26, 2019.[33]  TIAA proposed a variety of approaches to accommodate Plaintiffs-Respondents' concerns.[34]  Plaintiffs-Respondents did not agree to modify their subpoena.[35]

The disagreement between the Schlichter firm and TIAA relates to two issues.  First, the Schlichter firm maintains that testimony from prior cases would not be admissible in the *Yale*

---

[29]      *Id.*, Ex. 19 (Deposition of Douglas Chittenden in *NYU I*, dated November 22, 2017) at 107:9-13.

[30]      *Id.*, Ex. 23 (Deposition of Thomas White in *Duke I*, dated May 8, 2018) at 33:2-6.

[31]      *Id.*, Ex. 31 (Deposition of Thomas White in *Columbia*, dated September 28, 2018) at 9:10-15.

[32]      *Id.* ¶ 3; *id.* Ex. 2 (Letter from Lori Martin to Alex Braitberg, dated March 1, 2019).

[33]      *Id.* ¶¶ 3-12.

[34]      *Id.* ¶¶ 8-9, 12-13.

[35]      *Id.*, Ex. 10 (E-mail from Joel Rohlf to Brad Konstandt, dated March 29, 2019).

case.[36]  Second, the Schlichter firm asserts that it is entitled to examine TIAA on any topic in any litigation.[37]

To resolve the first concern (regarding the admissibility of prior testimony in the *Yale* litigation), TIAA proposed for the *Yale* parties' consideration a stipulation stating that no party would object to the use of prior TIAA testimony (specifically, the deposition transcripts and a supplemental declaration in the *Columbia* action) solely because it was not developed in the *Yale* action.[38]  Yale's counsel agreed to the stipulation.  The Schlichter firm did not, asserting that it is "entitled to discovery of admissible evidence in this case without having to be concerned how a stipulation may be interpreted."[39]

To address the second concern (regarding Plaintiffs-Respondents' rights to examine TIAA on any topic), TIAA suggested that Plaintiffs-Respondents submit written questions on the Overlapping Topics.[40]  The written responses could, thereafter, be used in the Schlichter firm's remaining actions.  Here again, the Schlichter firm refused, stating that it needs "full testimony on all topics."[41]  Nothing in the proposal regarding written questions would have limited Plaintiffs-Respondents' ability to examine TIAA witnesses on communications between TIAA and Yale.

---

[36]    *See id.*, Ex. 5 (Letter from Joel Rohlf to Lori Martin, dated March 13, 2019).

[37]    *See id.* ("Plaintiffs do not agree to your modification of the wording of any of our deposition topics.  We will ask questions in accordance with the topics as issued in the subpoena . . . .").

[38]    *Id.*, Ex. 7 (E-mail from Brad Konstandt to Joel Rohlf, dated March 20, 2019).

[39]    *Id.*, Ex. 8 (E-mail from Joel Rohlf to Brad Konstandt, dated March 25, 2019).

[40]    *Id.* ¶ 12; *id.*, Ex. 9 (E-mail from Brad Konstandt to Joel Rohlf, dated March 28, 2019).

[41]    *Id.*, Ex. 10 (E-mail from Joel Rohlf to Brad Konstandt, dated March 29, 2019).

Having exhausted the avenues for amicable resolution of this dispute, TIAA respectfully asks the Court for relief on the Overlapping Topics (Topic Nos. 16, 19, 24-25, and 29-31) for which TIAA has previously provided testimony.

Nothing in this motion limits Plaintiffs-Respondents' ability to seek information uniquely relating to the Yale retirement plans or TIAA's communications with Yale regarding TIAA's recordkeeping capabilities, annuity contracts, or marketing efforts.  TIAA has agreed to produce a corporate representative on the non-Overlapping Topics.[42]  That witness will be prepared to address TIAA's relationship and communications with Yale.  In this regard, the Schlichter firm may examine TIAA's witness about communications with Yale regarding consolidation of recordkeeping services with a single provider, and communications with Yale regarding TIAA's marketing practices with respect to Yale plan participants.

In the alternative, TIAA requests that the Court set reasonable limits on TIAA's testimony on the Overlapping Topics—with a presumptive limit of one hour—and require Plaintiffs-Respondents (through their counsel, the Schlichter firm) to compensate TIAA for its reasonable attorneys' fees and costs associated with testimony on the Overlapping Topics.

---

[42]   *Id.*, Ex. 2 (Letter from Lori Martin to Alex Braitberg, dated March 1, 2019).  TIAA offered to produce a witness to address 23 topics in the Subpoena related to Yale that are not at issue in this motion.

## ARGUMENT

### I.  THE COURT SHOULD TRANSFER THIS MOTION TO THE DISTRICT OF CONNECTICUT, WHERE IT CAN BE HEARD BY THE COURT HANDLING THE *YALE* ACTION

TIAA is filing this motion in the Southern District of New York, "the district where compliance is required." Fed. R. Civ. P. 45(d)(3)(A); *see KGK Jewelry LLC v. ESDNetwork*, No. 11 CIV. 9236, 2014 WL 1199326, at *2-3 (S.D.N.Y. Mar. 21, 2014) (holding that issuing courts lack jurisdiction over Rule 45(d)(3) motions absent a Rule 45(f) transfer). TIAA respectfully requests that this Court transfer the motion to the District of Connecticut, so that it can be heard by the court overseeing the underlying *Yale* action. *See* Fed. R. Civ. P. 45(f) ("When the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances."); *see also SEC v. Pence*, 323 F.R.D. 179, 187 n.3 (S.D.N.Y. 2017) (describing Rule 45(f) as a "liberal transfer policy").

The *Yale* court is familiar with the facts and legal issues of this case and has overseen the nearly year-long fact discovery process. It is well-positioned to consider whether and how the Overlapping Topics in the Subpoena relate to the allegations in the *Yale* action. As the advisory committee's note to Rule 45(f) explains, "[t]he prime concern [in considering transfer] should be avoiding burdens on local nonparties subject to subpoenas," and "transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation." Here, TIAA requests transfer to avoid the "disrupti[on]" identified in the advisory committee's note.

## II.   THE COURT SHOULD GRANT TIAA RELIEF FROM SUBPOENA ITEMS ON WHICH IT HAS ALREADY PROVIDED THE SCHLICHTER FIRM WITH TESTIMONY

Rule 26(b) of the Federal Rules of Civil Procedure governs the scope, frequency, and

extent of discovery.  In relevant part, Rule 26(b)(2)(C) states:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> (i)   the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii)   the party seeking discovery has had ample opportunity to obtain the information by discovery in the action.

S*ee also Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) ("Rule 26 vests the trial judge with

broad discretion to tailor discovery narrowly and to dictate the sequence of discovery."); *Krasney*

*v. Nationwide Mut. Ins. Co.*, No. 3:06 CV 1164 JBA, 2007 WL 4365677, at *3 (D. Conn. Dec.

11, 2007) (collecting and discussing cases in which "federal judges . . . issue[d] protective orders

when corporations [were] asked to respond to overly broad or unfocused Rule 30(b)(6)

Notices").  Rule 45(d) directs the court to "quash or modify a subpoena" that subjects its

recipient to an "undue burden."  Fed. R. Civ. P. 45(d)(3)(iv).

### A.   The Disputed Discovery Is Cumulative, Duplicative, and Unduly Burdensome

This court should exercise its broad discretion to limit the unreasonably cumulative and

duplicative discovery demands on TIAA.  *See generally Krasney*, 2007 WL 4365677, at *3.  In

particular, the court should issue a protective order to TIAA with respect to the Overlapping

Topics (Topic Nos. 16, 19, 24-25, and 29-31).

*First*, it is "unreasonably cumulative or duplicative" for identical counsel, prosecuting

identical claims, to seek repetitive testimony from TIAA in multiple template cases.  Fed. R. Civ.

P. 26(b)(2)(C)(i).  Here, information about TIAA's recordkeeping capabilities and annuity

contracts, as well as TIAA's general marketing practices, is available from other sources that are

"more convenient, less burdensome, [and] less expensive" than by means of a third or fourth

deposition.  *Id.*  Depositions "are inherently 'time-consuming and inefficient,' and they ought to

'be productive and not simply an excuse to seek information that is already known.'"  *Dongguk*

*Univ. v. Yale Univ.*, 270 F.R.D. 70, 74 (D. Conn. 2010); *see also id.* at 80 (explaining that

"30(b)(6) depositions can be used to test theories, challenge facts and fill in information gaps,

but they cannot be used to reinvent the wheel by asking questions that have already been

completely answered").  The Schlichter firm has available to it deposition transcripts from cases

it brought and testimony it developed.  Yale has confirmed that it will not object to the

introduction in this case of testimony that the Schlichter firm developed in the *Columbia* case

solely because it was developed in another action.

    *Second*, TIAA's non-party status is entitled to "special weight."  *Arista Records LLC v.*

*Lime Group LLC*, No. 06 Civ. 5936, 2011 WL 781198, at *2 (S.D.N.Y. Mar. 4, 2011) (citation

omitted).  In discovery disputes, "[t]he most obvious burden is borne by the non-party witness,"

and courts must be "particularly sensitive to any prejudice to non-litigants drawn against their

will into the legal disputes of others."  *Jack Frost Labs., Inc. v. Physicians & Nurses Mfg. Corp.*,

No. 92 CIV. 9264 (MGC), 1994 WL 9690, at *2 (S.D.N.Y. Jan. 13, 1994).  TIAA is not a party to

the *Yale* action.  It operates without profit in accordance with its charter.  Notwithstanding its

unique structure, TIAA has incurred substantial costs responding to the Schlichter firm's requests

for testimony on the Overlapping Topics.

    And *third*, TIAA's offer to cross-designate testimony regarding marketing of non-plan

products is reasonable given that the *Yale* complaint includes no allegations regarding TIAA's

marketing practices.  The Schlichter firm has filed some actions against universities that include

allegations that the plan sponsor should have considered vendors' sale of non-plan products to

participants when negotiating plan fees.[43]  The *Yale* action does not include these allegations,

making Plaintiffs-Respondents' request for testimony on these topics especially burdensome.

In *City of New York v. A-1 Jewelry & Pawn, Inc.*, No. 06 CV 2233 (JBW), 2008 WL

346366 (E.D.N.Y. Feb. 6, 2008), the district court considered the burden on a non-party witness

of providing testimony on the same subject matter in multiple cases in different jurisdictions.

The court held that a single deposition should be used in two cases.  In that action, counsel had a

copy of the witness's deposition transcript in a prior, separate action (and was working with

counsel in that action).  *Id.* at *5-6.  The court held that the single deposition would suffice to

obtain any "additional information" needed in two separate actions.  *Id*.  Here, the Schlichter

firm has taken TIAA's testimony on the Overlapping Topics in six virtually identical actions and

has had ample opportunity to develop the record on issues regarding TIAA's recordkeeping

capabilities, annuity contracts, and national marketing efforts.

TIAA has not identified other cases in this Circuit regarding the use of deposition

transcripts across multiple cases for substantially duplicative testimony.  The principles

underlying the Federal Rules of Civil Procedure, however, support TIAA's request in this case.

The courts interpret the Federal Rules as limiting testimony where the topics to be explored in

the deposition can be developed through less burdensome methods.  In *Dongguk*, for example,

the court agreed to modify or quash several Rule 30(b)(6) topics, holding that the information

sought was more readily available from other sources or was duplicative of information already

---

[43]      *See Duke I*, Dkt. No. 72; *NYU II*, Dkt. No. 105; *Vanderbilt*, Dkt. No. 102.  The operative complaints in those cases allege that the plan sponsors imprudently allowed their service providers, including TIAA, to market and sell non-plan services and products, benefitting the providers.

provided in the case.  *See* 270 F.R.D. at 75-80.  This same outcome could be achieved through designation of the prior transcripts of TIAA testimony on the Overlapping Topics.

Similarly, in *SEC v. Ahmed*, No. 3:15CV675 (JBA), 2017 WL 1391518 (D. Conn. Apr. 7, 2017), the court quashed a Rule 30(b)(6) topic "on which . . . [defendants had] already received extensive testimony" from the non-party movant in a previous 30(b)(6) deposition in the same case, holding that it was unreasonably cumulative and duplicative and noting that defendants had offered no explanation of why they needed to pursue the same testimony a second time (aside from vague references to their "more developed understanding of the case").  *Id.* at *2.  The court also quashed topics where defendants could not show that there was "information relevant to [the topics] that [was] not readily available through review of the documentation produced by [the non-party movant]."  *Id.* at *2-3.  So too here, where the Schlichter firm seeks testimony that is duplicative of readily-available prior testimony that it developed in multiple cases.

**B.      TIAA's Prior Testimony on the Overlapping Topics Is Admissible**

The Schlichter firm asserts that it cannot agree to cross-designate testimony from its other, related cases because transcripts of TIAA's prior testimony "would be inadmissible hearsay" in *Yale* and the testifying witnesses from the prior cases "may not be subject to a trial subpoena."[44]  The Federal Rules provide mechanisms to address this concern.

Hearsay evidence is admissible by stipulation of the parties.  *See United States v. Plitman*, 194 F.3d 59, 64 (2d Cir. 1999) (trial court did not err in admitting hearsay evidence by stipulation); *see also Pittman ex rel. Hamilton v. Cnty. of Madison*, 863 F.3d 734, 736 (7th Cir. 2017) ("Even if the video testimony was hearsay of the sort normally excluded from a trial, the defendants had . . . stipulated to its admissibility, and a stipulation is binding."), *cert. denied sub*

---

[44]      Konstandt Decl., Ex. 5 (Letter from Joel Rohlf to Lori Martin, dated March 13, 2019).

*nom. Madison Cnty. v. Pittman*, 138 S. Ct. 983 (2018).  Here, Yale has agreed that it will not object to the admissibility of the transcripts of testimony that Plaintiffs-Respondents developed in the *Columbia* case solely because that testimony was developed in litigation to which it was not a party.

Moreover, if TIAA's witnesses are unavailable to testify at trial, testimony given at a deposition, "*whether given during the current proceeding or a different one,*" is not excluded by the rule against hearsay so long as the party against whom the testimony is offered or its predecessor in interest had "an opportunity and similar motive" to develop the prior testimony. Fed. R. Evid. 804(b)(1) (emphasis added).  Courts in the Second Circuit apply the "predecessor in interest" standard liberally, holding that it is met where the "previous party [had] like motive to develop the testimony about the same material facts."  *Santrayll v. Burrell*, No. 91 CIV. 3166 (PKL), 1998 WL 60926, at *2 (S.D.N.Y. Jan. 21, 1998) (parties defending against the same claims in different cases were predecessors in interest); *see Fed. Hous. Fin. Agency v. Merrill Lynch & Co.*, No. 11 CIV. 6202 DLC, 2014 WL 798385, at *1 (S.D.N.Y. Feb. 28, 2014) (courts use a "realistically generous" approach rather than a "formalistically grudging" one to determine whether a party is a predecessor in interest and admit testimony where "in the former suit a party [had] a like motive to cross-examine about the same matters as the present party would have" (citations omitted)).

The *Santrayll* standard is satisfied in this case.  The Schlichter firm took the deposition of TIAA (through Adam Polacek) three times in template cases that it filed against other universities.  The firm took the deposition of TIAA (through Thomas White) two times. Columbia and Cornell were represented by the same defense counsel (Brian Netter at Mayer Brown) that represents Yale in the underlying action.  All of the university defendants are

defending the template legal claims.  The parties to this action have comparable incentives to develop testimony about TIAA's recordkeeping capabilities, annuity contracts, and marketing efforts.

### III. ALTERNATIVELY, THE COURT SHOULD LIMIT TESTIMONY ON THE SUBPOENA ITEMS FOR WHICH TIAA HAS PROVIDED PRIOR TESTIMONY AND SHIFT TO PLAINTIFFS-RESPONDENTS THE REASONABLE FEES AND COSTS THAT TIAA INCURS PREPARING AND DEFENDING TESTIMONY ON THE OVERLAPPING TOPICS

As an alternative form of relief, TIAA respectfully requests that the Court (1) set limits on the duration of testimony on the Overlapping Topics—a presumptive limit of one hour—and (2) shift the reasonable fees and costs to Plaintiffs-Respondents for the preparation and defense of TIAA witnesses on the Overlapping Topics.

The court's discretion on this motion extends to placing reasonable limits on the time a witness is required to testify.  *See N. River Ins. Co. v. O&G Indus., Inc.*, No. 3:13-CV-00589 (JAM), 2016 WL 6600490, at *2 (D. Conn. Nov. 7, 2016) (limiting depositions of two non-parties to four hours each, divided equally among counsel); *A-1 Jewelry & Pawn, Inc.*, 2008 WL 346366, at *5-6 (limiting deposition of non-party witness to five hours to be used in two cases). Here, a limitation of one hour for testimony on TIAA's recordkeeping capabilities, annuity contracts, and marketing efforts is reasonable because the Schlichter firm has had ample opportunity to develop the record on these topics in six other cases.  Moreover, allegations regarding the marketing topics are missing entirely from the *Yale* complaint.  Any restriction on the Overlapping Topics will have no application to Plaintiffs-Respondents' ability to examine TIAA on issues regarding TIAA's communications with Yale and the non-Overlapping Topics in the Subpoena.

The court's discretion also extends to TIAA's application for fee shifting.  Rule 45(d) provides that "[a] party or attorney responsible for issuing and serving a subpoena must take

reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and the court enforcing the subpoena must "enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply."  Fed. R. Civ. P. 45(d)(1).  "Litigants and courts are instructed to be especially solicitous of non-party targets of subpoenas."  *In re Namenda Direct Purchaser Antitrust Litig.*, No. 15 Civ. 7488 (CM)(JCF), 2017 WL 3822883, at *4 (S.D.N.Y. Aug. 30, 2017).  As such, shifting the cost of compliance to the party seeking discovery is "particularly appropriate in the context of subpoenas, since Rule 45 directs courts to minimize the burden on non-parties."  *Id.* at *10 (citation omitted) (holding that party seeking to go forward with deposition on broad topics must pay non-party's reasonable expenses incurred in complying with the subpoena).

TIAA operates without profit and has incurred substantial costs in the preparation and presentation of witnesses in the numerous Schlichter firm actions.  With respect to the Overlapping Topics, if the Court limits testimony to one hour, TIAA estimates that it will incur approximately $24,000 in attorneys' fees and costs.[45]  In the absence of reasonable limitations on the duration of testimony, TIAA assumes that Plaintiffs-Respondents will use the same time they have used in the prior litigations, resulting in approximately $38,000 in attorneys' fees and costs for the Overlapping Topics.[46]  Shifting these fees and costs to Plaintiffs-Respondents is reasonable because TIAA is a non-party that already has been examined by the Schlichter firm on those topics in six prior cases and the record of that testimony is available to the Schlichter firm for use in the *Yale* action.

---

[45]     Calderon Rizzo Decl. ¶ 19.

[46]     *Id.* ¶ 22.

## **CONCLUSION**

For the foregoing reasons, TIAA respectfully requests that the Court (1) transfer the

instant motion to the District of Connecticut for adjudication, or (2) enter a protective order with

respect to the Overlapping Topics, or (3) enter an order limiting testimony on the Overlapping

Topics with a presumptive limit of one hour and order Plaintiffs-Respondents to pay TIAA for its

reasonable legal fees and expenses in an amount not to exceed $24,000 to $38,000 for testimony

associated with the Overlapping Topics.

Dated: April 5, 2019

Respectfully submitted,

*/s/ Lori A. Martin*
Lori A. Martin
Brad E. Konstandt
WILMER CUTLER PICKERING HALE
    AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800 (t)
(212) 230-8888 (f)
lori.martin@wilmerhale.com


James I. Glasser
WIGGIN AND DANA LLP
One Century Tower
265 Church Street
New Haven, CT 06510
(203) 498-4400 (t)
(203) 782-2889 (f)
jglasser@wiggin.com

*Attorneys for Petitioner Teachers Insurance*
*and Annuity Association of America*

18